UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RICHARD RANDOLPH,
Petitioner

v.

LUIS SPENCER,
Respondent

## MEMORANDUM IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254

Petitioner, Richard Randolph, stands convicted of first degree murder, armed assault in a dwelling and assault and battery by means of a dangerous weapon. The murder conviction was based on deliberate premeditation. The verdicts were returned in the Suffolk County Superior Court on December 10, 1986. The defendant was sentenced on the murder conviction to a term of life with possibility of parole. Given the severity of the sentence and the magnitude of the constitutional error, a detailed recitation of the procedural history and factual basis for petition for habeas corpus relief is necessary.

## PROCEDURAL HISTORY

Petitioner was convicted on the three charges (first degree murder, armed assault in a dwelling, and assault and battery by means of a dangerous weapon) on December 10, 1986. The defendant was represented at trial by appointed counsel, Attorney John Courtney. The defendant was represented in a motion for a new trial and on a consolidated appeal by Attorney William M. White, Jr. On June 1, 1993 the Massachusetts Supreme Judicial Court affirmed the petitioner's convictions and the denial of the motion for a new trial. Commonwealth v. Randolph, 415 Mass. 364 (1993).

On January 3, 2000, represented by Attorney Mary T. Rogers, the defendant filed a Motion For a New Trial and, alternatively, Motion For Lesser Included Offense. On

1

August 10, 2000, the motion was denied without a hearing. The defendant sought and obtained leave to appeal the denial of the motion pursuant to M.G.L. c. 278, § 33E. On December 19, 2002 the Supreme Judicial Court affirmed the denial of the motion. 438 Mass. 290 (2002). On January 22, 2003 the Supreme Judicial Court denied the defendant's Petition for Rehearing.

**STATEMENT OF FACTS**

The Supreme Judicial Court recited the following facts in its recent decision denying the defendant's second Motion For a New Trial:

On August 2, 1984, Brian Golden and several other residents of Vallar Road in the East Boston section of Boston were involved in a dispute with the defendant and his brother, Leroy, about their reckless driving in the neighborhood. Shortly thereafter, the defendant threw a knife which pierced Brian Golden's eye. Golden died as a result of his injury. The sequence of events connecting these two incidents is hotly disputed, and, because this dispute is central to our resolution of his current claims and was not described in his original appeal, we detail both the Commonwealth's and the defendant's version of the facts.

**A. The Commonwealth's Case.**

Linda Golden (victim's wife) testified that, shortly after the confrontation between the neighbors and the defendant and his brother, the latter two individuals burst into the Golden's second-floor apartment armed with a bat and a board. The defendant and his brother attacked Linda Golden, striking her repeatedly on the back and legs with the bat and board while threatening to kill her. Brian Golden eventually arrived in response to his wife's screams for help and chased the attackers out of his apartment, at some point arming himself with a kitchen knife. The defendant and his brother (and one or two other relatives, although the evidence is conflicting as to who arrived when) retreated up to the third floor where their mother lived. Some members of the Randolph family, including the defendant, threw household objects down toward the Goldens, who

were still on the second-floor landing. Shortly afterward the defendant threw the knife that inflicted the fatal wound.

**B. The Defendant's Version.**

According to the defendant's witnesses, the defendant, accompanied by his brother, Leroy, and his teenage nephew, "Little Leroy," were attempting to reach the third floor. As they climbed past the second-floor landing Brian Golden emerged from his doorway, grabbed Leroy, and proceeded to drag him inside the Goldens' apartment. Leroy managed to escape with the help of his relatives, but not before Brian Golden had punched him several times in the face. Next, according to the defendant's version of events, Brian Golden grabbed a knife (or, in one account, a bat) and proceeded to chase the defendant and members of his family up toward the third floor, all the while threatening to kill them. The defendant, his brother, and his nephew all threw objects down the stairs to discourage pursuit. One of these objects was the knife that killed Brian Golden.

In addition to the facts stated in the Supreme Judicial Court decision, it is important for a full understanding of the case to include the following evidence was that adduced before the jury: Carolyn Grant, a neighbor who lived in the building testified that she saw Anne Randolph, the defendant's mother, and "Little Leroy" at the top of the stairs a second after Brian Golden was struck with the knife. The defendant's mother testified that she pushed the defendant into her apartment and that "Little Leroy" was the last to go into the apartment. "Little Leroy" went to a bedroom and hid under a bed. "Little Leroy" confessed to several individuals that he was the one who threw the knife that struck Brian Golden. None of the other witnesses (other than Linda Golden) identified the defendant as the person who threw the knife. Police officers who responded to the scene described the defendant as "highly intoxicated" and "very, very intoxicated."

3

## ISSUE FOR HABEAS CORPUS RELIEF

The petitioner contends that his convictions were obtained in gross violation of his Sixth Amendment right to effective assistance of counsel. Further, the petitioner was denied effective representation of counsel in his direct appeal resulting in his inability to challenge an unconstitutional burden shifting instruction to the jury on the issue of voluntary manslaughter. The performance counsel at both trial and the first motion for a new trial and consolidated appeal fell enormously below any objective standard of reasonableness and resulted in the unreliable and fundamentally unfair outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984).

On the trial of the present case, it is undisputed that the trial judge failed to instruct the jury that, when there are mitigating circumstances raised by the evidence and both murder and manslaughter are properly raised as possible verdicts, the jury may not return a verdict of guilty of murder unless the government proves the absence of heat of passion on sudden provocation or sudden combat beyond a reasonable doubt.

The court shifted the burden to the defendant and instructed:

> Therefore, after considering all of the evidence you find the Commonwealth has proven beyond a reasonable doubt that the circumstances preceding or attending the killing were caused by the adequate and reasonable provocation by the deceased, or by the act of sudden combat against the defendant of a kind so as to reasonably excite in him the passions of anger, fear, nervous excitement or heat of blood, and that thereupon the defendant upon the influence of such passion and before the cooling of the blood killed the deceased, they you are warranted in finding him guilty of voluntary manslaughter. If the Commonwealth has not met this burden, then you must find the defendant not guilty of voluntary manslaughter.

4

The due process clause of the Fourteenth Amendment denies the states the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense. In Re Winship, 397 U.S., 358, 364 (1970). Jury instructions relieving states of this burden violate a defendant's due process rights. See Francis v. Franklin, 471 U.S. 307 (1985); Sandstrom v. Montana, 442 U.S. 510 (1978); Carella v. California, 491 U.S. 263, 265 (1989).

In analyzing the defendant's claims under the "substantial risk of a miscarriage of justice" standard the Supreme Judicial Court found that, "(t)he judge delivered an instruction that impermissibly shifted the burden of proving an absence of provocation from the Commonwealth to the defense." 438 Mass. 290, 297. The court found that the instruction was error, that is was prejudicial to the defendant and that counsel's failure to raise the issue could not be viewed as a reasonable tactical decision. However, the court determined that in the context of the entire trial, it could not conclude that the error materially influenced the verdict. The court's rationale was as follows:

> "The defendant maintains that the victim was the aggressor, first ambushing and beating the defendant's brother and then chasing the defendant with a knife while threatening him with death. The Commonwealth's witnesses, including the victim's wife, provide a vastly different account. The victim, they allege, entered his own apartment to find his wife being attacked by the defendant and his brother with a bat and a board.
>
> The jury convicted the defendant not only of murder in the first degree but also of armed assault in a dwelling and assault and battery by means of a dangerous weapon on the victim's wife. We may therefore conclude that they must have rejected the testimony of the defendant's witnesses and believe beyond a reasonable doubt that the testimony of the Commonwealth's witnesses regarding the circumstances leading up to the killing. It follows from this that the error in the provocation instruction

5

could not have given rise to a miscarriage of justice: Brian Golden's response to a violent, armed assault on his wife in their dwelling cannot constitute provocation sufficient to mitigate a killing by the intruders." Id at 300 – 301.

The defendant contends that the rationale utilized by the Supreme Judicial Court is erroneous as a matter of federal constitutional law and is unreasonable. If, as the court readily recognized, the defendant was entitled to an instruction on provocation, the unconstitutional burden shifting rendering of the instruction served to deprive him of his right to a fair trial. Where the evidence was in substantial dispute, it is inconceivable to find that it did not materially influence the jury – even when considering the remaining verdicts.

It is likewise inconceivable that both trial counsel and initial appellate counsel failed to recognize and raise the issue in a timely fashion. The court noted prior to analyzing the case under the "substantial risk" standard that, "(h)ad he raised his current claims on direct appeal he would have received a more deferential review as required by statute." Id at 297.

The defendant's first degree murder conviction founded upon an undisputed violation of In Re Winship, 397 U.S. 358 (1970) and Sandstrom v. Montana, 442 U.S. 510 (1979) clearly rises to the level of a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Farley, 512 U.S. 339, 348 (1994). The Supreme Judicial Court's rejection of the appeal of the denial of his second motion for a new trial, when he was finally represented by competent counsel, constitutes and unreasonable application of federal law. O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998). Proof of each element of a crime beyond a reasonable doubt is a cornerstone of the federal justice system. When a defendant, particularly in a case where life imprisonment is at stake, is incompetently represented to the point where conviction is based on less than proof beyond a reasonable doubt, fundamental due process has been abridged.

The defendant, who was and remains indigent and unschooled in the law, was represented at trial and on his initial appeal by counsel provided by the Commonwealth of Massachusetts. Both trial counsel and initial appellate counsel failed to recognize the now accepted fact that the jury instructions on the murder charge unconstitutionally shifted the burden of proof on provocation from the State to the defendant. It is fundamentally unfair and shocking to the conscience to uphold a life without parole murder conviction on such tenacious circumstances. The impediment of ineffective assistance of counsel was removed upon the filing of the defendant's second motion for a new trial. Any argument that the issue finally raised by defendant's second appellate counsel, Attorney Mary T. Rogers, should have been previously raised by the indigent defendant subsequent to his first appeal is defeated by the fact that the Supreme Judicial Court, as required by G.L. c. 278, §33E conducted "plenary review" of the defendant's conviction. 415 Mass. 364, 368 (1993). The plenary review was conducted under the less stringent appellate standard of "substantial likelihood of miscarriage of justice." Commonwealth v. Ciampa, 406 Mass. 257, 267-268 (1989). A review of the entire record by the learned court failed to discover the unconstitutional burden shifting instruction. It would be draconian to require an indigent defendant without counsel to uncover the serious and material error under threat of waiver where two attorneys provided by the state and the Supreme Judicial Court did not. Under these circumstances, the present claim is not time-barred under 28 U.S. c. §2244.

Respectfully submitted,
Richard Randolph
By his Attorney,

Robert J. Wheeler, Jr.
Wheeler & O'Brien, P.C.
160 State Street, 8th Floor
Boston, MA 02109-2502
BBO# 524410
(617) 973-5858

Date: 1/20/04

## CERTIFICATE OF SERVICE

I, Robert J. Wheeler, Jr., hereby certify that on this 21st day of January, 2004, I mailed a copy of the defendant's Petition and Memorandum In Support Of Petition for Writ Of Habeas Corpus to:

>Office of the Attorney General
>One Ashburton Place
>Boston, Massachusetts 02108

Robert J. Wheeler, Jr.